IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEAN VARGO, an adult incompetent, ) | |
| by his parent and natural guardian, ) | |
| PATRICIA A. VARGO, ) | |
|     Plaintiff, ) | |
| ) | |
|     vs. ) | Civil Action No. 06-1574 |
| ) | Judge Conti |
| PLUM BOROUGH, et al., ) | Magistrate Judge Mitchell |
|     Defendants. ) | |

REPORT AND RECOMMENDATION

I.    Recommendation

It is respectfully recommended that the partial motion to dismiss submitted on behalf of Defendants (Docket No. 5) be granted and that Counts II-III of the complaint be dismissed.

II.    Report

Plaintiff, Dean Vargo, an adult incompetent, by his parent and natural guardian, Patricia A. Vargo, brings this civil rights action against Defendants, Plum Borough, Plum Borough Police Department, Robert Payne (individually and in his capacity as the Chief of Police of Plum Borough), and three John Doe Plum Borough police officers.  The complaint alleges that the Defendants ignored obvious signals of Vargo's physical, mental and emotional state when they arrested him in the middle of the night on November 24, 2004 and placed him in the Plum Borough Police Station.  The only person available to monitor Vargo was the police dispatcher, who was in a dispatch center where he could not physically get to Vargo in an emergency. Shortly after being placed in a cell, Vargo attempted suicide and, although he was revived, he has been a human "vegetable" since the incident.

Presently before the Court is a motion to dismiss, brought by the Defendants.  In fact, the

motion seeks only the dismissal of Counts II-III of the complaint, the state law claims, and as such it is properly titled a partial motion to dismiss. For the reasons that follow, the motion should be granted and these claims should be dismissed.

Facts

On November 24, 2004, at or about 3:30 a.m., police officers (John Doe No. 1 and No. 2) of the Plum Borough Police Department arrested Vargo on a bench warrant for failure to appear for trial on September 15, 2004 in the Court of Common Pleas of Allegheny County on charges of possession of a controlled substance and drug paraphernalia, providing false identification to law enforcement officials and driving under suspension. Vargo's location had been reported to the police department by his girlfriend, Dana Pollit, with whom he lived at the Kellywood Manor apartment complex on Milltown Road, Plum Borough, Allegheny County, Pennsylvania. Plaintiff alleges that Ms. Pollit reported that he had kicked in the door to her apartment and that he was her ex-boyfriend, but that in fact he lived there with her and did work for the owner of the complex to help pay the rent. (Compl. ¶¶ 9-11.)

Plaintiff alleges that upon his arrest, he advised the police that he had kicked the door down because he knew that Ms. Pollit had another man there and found them intimately involved in the bedroom, and that she had called the police because she knew about the bench warrant and she also knew that he would be at a friend's house. He further alleges that, at the time of the arrest, the police knew or should have known by his appearance, conduct and irrational behavior that he was under the influence of mind-altering substances. This fact was later proven by blood tests at Allegheny General Hospital where his blood tested positive for heroine. (Compl. ¶¶ 12-13.)

Plaintiff alleges that, despite all that was obviously apparent to these officers, they locked him in the Plum Borough Police Station, where there were no other prisoners in any of the four cells.  They took his belt and shoes, but did not assign a police officer to be physically present to observe him as being in such a state as to be a potential suicide victim, nor did they arrange for his transport to the Allegheny County Jail for processing due to the bench warrant.  Rather, upon locking Plaintiff up, approximately ten minutes after his arrest, John Doe No. 1 and No. 2 left the station to answer alleged road calls, leaving only a dispatcher (John Doe No. 3) to monitor him.  The dispatcher was in a dispatch center where he could not physically get to Vargo in an emergency.  (Compl. ¶¶ 14-17.)

By a screen in the dispatch center, John Doe No. 3 observed Vargo, saw him sitting on a bench in his cell at 3:43 a.m. and went about other business.  At 3:49 a.m., John Doe No. 3 observed Vargo "trying to hang himself with his t-shirt that was tied onto the cage."  According to Chief of Police Robert Payne, the dispatcher summoned paramedics and John Doe No. 1 and No. 2.  Plaintiff notes that, although these officers were on the road answering calls, Chief Payne amazingly stated that they arrived back at the station within a minute and a half.  Although CPR was performed by the paramedics, Vargo has been a human "vegetable" since the incident.  (Compl. ¶¶ 18-22.)

Procedural History

Plaintiff filed this action on November 24, 2006.  Count I alleges that Defendants violated Vargo's civil rights under the Eighth and Fourteenth Amendments to the Constitution by acting with deliberate indifference to his special needs while he was in their custody and pursuant to the state-created danger theory of liability, and these claims are brought pursuant to 42 U.S.C.

3

§ 1983.  Counts II-III allege state law claims, specifically: negligence (Count II) and "municipal breach of duty" (Count III).

On February 2, 2007, a motion to dismiss was filed by Defendants.  They seek dismissal of the state law claims in Counts II-III on the grounds of governmental immunity.

Standard of Review

A motion to dismiss must be viewed in the light most favorable to plaintiff and all well-pleaded allegations of the complaint must be accepted as true.  Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976).  The motion cannot be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  See also National Org. for Women, Inc. v. Scheidler, 510 U.S. 249 (1994).  The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim.  Williams, 490 U.S. at 323; Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

In Counts II-III, Plaintiff alleges that Defendants' action constituted negligence and municipal breach of duty.  Defendants move to dismiss these claims on the grounds that they do not fall within the exceptions to governmental immunity.

The Pennsylvania Political Subdivision Tort Claims Act provides that "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."  42 Pa. C.S. § 8541.  The Act then provides that:

> A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):

>   (1)  The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and
>
>   (2)  The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b).  As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

42 Pa. C.S. § 8542(a).  The statute lists eight negligent acts for which recovery against the local agency is permitted: 1) vehicle liability; 2) care, custody or control of personal property; 3) care, custody or control of real property; 4) trees, traffic controls and street lighting; 5) utility service facilities; 6) streets; 7) sidewalks; and 8) care, custody or control of animals.  42 Pa. C.S. § 8542(b).

The real estate exception to governmental immunity provides that immunity does not apply when the injury results from "[t]he care, custody or control of real property in the possession of the local agency...."  42 Pa. C.S. § 8542(b)(3).  Defendants contend that Pennsylvania caselaw forecloses the argument that the Plum Borough Police Station was the real property that contributed to Vargo's suicide attempt.

The Pennsylvania Supreme Court has stated that:

>   [T]he real estate exception can be applied only to those cases where it is alleged that the artificial condition or defect of the land *itself* causes the injury, not merely when it facilitates the injury by the acts of others, whose acts are outside the statute's scope of liability.

Mascaro v. Youth Study Center, 523 A.2d 1118, 1124 (Pa. 1987).

Based upon the Mascaro case, the Pennsylvania Commonwealth Court held that the real estate exception did not apply when two arrestees hanged themselves in their jail cells:

> The injury for which Appellants seek compensation in these cases was suicide by hanging. Each act was committed by Scott Harding and Christopher Cooper themselves. The condition of the jail facilities may have made it easier for the hanging to be accomplished, but the condition of the jail facilities themselves did not cause the death of either Scott Harding or Christopher Cooper.

Harding v. Galyias, 544 A.2d 1060, 1065 (Pa. Commw. 1988) (en banc), appeal denied, 557 A.2d 727 (Pa. 1989). See also Pennsylvania State Police v. Klimek, 839 A.2d 1173, 1176 (Pa. Commw. 2003), appeal denied, 857 A.2d 681 (Pa. 2004) (holding cell did not cause the decedent's death but merely facilitated it when arrestee hanged himself with shoelaces he retrieved from boots placed outside the cell); Diaz v. Houck, 632 A.2d 1081, 1085 (Pa. Commw. 1993) (real estate exception did not apply when arrestee claimed injury based on lack of chairs for her to sit in or protruding jail cell bars that she hit when she fell).

Plaintiff argues that § 8542(b)(2) (the personal property exception) applies, contending that the clothes Vargo was wearing, which he ultimately used to attempt suicide, were in the Defendants' care, custody or control. However, the only authority he cites to support this argument is the dissent in the Klimek case, wherein Judge Kelley opined that a State Police Troop Order requiring the removal of shoelaces put them in the state's care, custody or control. 839 A.2d at 1177 (Kelley, S.J., concurring and dissenting). As Plaintiff acknowledges, the majority of the court rejected this position, holding that, "[b]ecause it was the action of hanging himself that caused the Deceased's death and, at most, the shoelaces facilitated that outcome, i.e., it cannot be alleged that a shoelace itself caused his death, the Klimeks' complaint does not fall within the personal property exception to sovereign immunity." Id. at 1176.

Plaintiff argues that this issue has not been definitively decided by the Pennsylvania Supreme Court and he urges the Court to follow Judge Kelley's dissent in Klimek. However, he

6

has failed to recognize this Court's role in addressing matters of state law. "In the absence of guidance from the state's highest court, we are to consider decisions of the intermediate appellate courts for assistance in predicting how the state's highest court would rule." Gares v. Willingboro Twp., 90 F.3d 720, 725 (3d Cir. 1996). The opinions of intermediate appellate state courts are "not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." West v. AT & T Co., 311 U.S. 223, 237 (1940). Plaintiff has pointed to no such persuasive data.

In addition, the Pennsylvania Supreme Court has stated that, "[b]ecause of the clear intent to insulate government from exposure to tort liability, the exceptions to immunity are to be strictly construed." Lockwood v. City of Pittsburgh, 751 A.2d 1136, 1139 (Pa. 2000) (citation omitted). Thus, given the choice between interpreting a term in an exception to immunity, such as "personal property," broadly or narrowly, a court should interpret it narrowly in the absence of authority for doing otherwise. See, e.g., Smith v. City of Chester, 851 F. Supp. 656 (E.D. Pa. 1994) (rejecting the plaintiffs' argument that a school crossing guard was a "traffic control" bringing defendants' conduct within the "trees, traffic controls and street lighting" exception to governmental immunity). Adopting Plaintiff's argument would require the Court to broadly interpret the term "personal property" and the Court should refrain from doing so, particularly in light of the authority cited above. Therefore, § 8452(b)(2) does not apply.[1]

---

[1] Moreover, it is noted that, even if the exception applied, the losses recoverable would be those related to the "property" itself not the person allegedly injured thereby. See Kearney v. City of Philadelphia, 616 A.2d 72, 75 (Pa. Commw. 1992), appeal denied, 626 A.2d 1160 (Pa. 1993) (even assuming that the remains of a body could be considered the "personal property" of the next of kin, recovery was unavailable because the only losses recoverable are property losses and the plaintiff was alleging that the city's actions caused her personal injuries in the form of
(continued...)

7

Plaintiff also argue that 42 Pa. C.S. § 8550 deprives local agency employees of immunity for intentional torts. This statute provides that:

> In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

See Yakowicz v. McDermott, 548 A.2d 1330, 1333 & n.5 (Pa. Commw. 1988) (noting that Commonwealth employees are immune from liability even for intentional torts but that *local agency employees* lose their immunity defense where their actions constitute a crime, actual fraud, actual malice or willful misconduct), appeal denied, 565 A.2d 1168 (Pa. 1989).

However, Plaintiff has not alleged actual malice and, "as the Pennsylvania Supreme Court has recognized, willful misconduct is a demanding level of fault." Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir. 2006). In Sanford, a high school student (Sanford) sent a note to a girl who had dated him but was now dating someone else in which he stated that the news "almost made me want to go kill myself." The girl contacted the school's guidance counselor (Stiles), who interviewed Sanford and concluded that he did not present any signs that he was thinking about suicide. Subsequently, Sanford committed suicide. However, the court held that the allegation that Stiles did not take enough action to prevent it did not rise to the level of willful misconduct so as to fall within § 8550.

---

[1](...continued)
mental anguish, nervous shock, shame, humiliation and embarrassment). Plaintiff is not seeking to recover for damages to the t-shirt, but for the injuries he suffered as a result of the attempted suicide.

Similarly, Plaintiff has alleged that the police took Vargo's belt and shoes and placed him in a cell where he was monitored by a camera, but that they failed to post an officer physically on site to watch or transport him to the Allegheny County Jail for processing.  Based on these allegations, the conduct of the police, even if arguably negligent, could not have risen to the level of willful misconduct so as to fall within § 8550.

For these reasons, it is recommended that the partial motion to dismiss submitted on behalf of Defendants (Docket No. 5) be granted and Counts II-III be dismissed.

Within ten (10) days of being served with a copy, any party may serve and file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

        Respectfully submitted,

        s/Robert C. Mitchell
        ROBERT C. MITCHELL
        United States Magistrate Judge

Dated: March 21, 2007